John B. Coppola, Appellant, *v.* Sylvia Di Benedetto, Respondent.

Supreme Court, Appellate Term, First Department, May 5, 1926.

Pleadings — counterclaim — action for value of professional services furnished defendant — complaint in form of common counts — answer set up general denial and after alleging amount claimed was unreasonable recited as counterclaim that plaintiff acted for defendant's nephew and converted money delivered to him to secure release of nephew from order of arrest — counterclaim sufficient under Civil Practice Act, § 266.

Plaintiff, whose complaint recited in the form of common counts that at defendant's request he had performed as an attorney professional services for her, may not object to defendant's answer which sets up a general denial with an additional statement that if plaintiff is entitled to any payment for his services the amount demanded in his complaint is unreasonable and as a separate defense and counterclaim recites that plaintiff served as the attorney for defendant's nephew in a transaction personal to him, and that plaintiff subsequently converted to his own use money delivered to him for the purpose of securing the release of the nephew from an order of arrest, for the reason that if plaintiff succeeds in proving that the retainer was that of the defendant, the counterclaim is warranted by a literal interpretation of section 266 of the Civil Practice Act, particularly since the facts upon which it is founded are so peculiarly related to the cause of action that they would be a competent defense thereto. If, on the other hand, defendant succeeds in proving that the retainer was that of her nephew, the transaction and the subject of the action were services performed for that nephew, and defendant's alleged loss is one clearly " arising out of the transaction   *   *   *   or connected with the subject of the action.".

Appeal by plaintiff from so much of an order of the City Court of the City of New York as grants leave to defendant to serve a fourth amended answer.

*Benjamin Waxenberg,* for the appellant.

*Michael J. Horan,* for the respondent.

Bijur, J. The complaint sets forth a cause of action by an attorney for professional services rendered to defendant between November 15, 1921, and June 16, 1922, at her special instance and request, and alleges both the agreed and reasonable value of such services to have been $1,500. The proposed fourth amended answer contains substantially a general denial with an additional statement that if plaintiff is entitled to any payment for services, the amount claimed is unreasonable; and as a separate defense and counterclaim that in the month of February, 1922, the plaintiff acted as an attorney for a nephew of the defendant who was involved in marital difficulties; that the nephew was arrested; that plaintiff told defendant that in order to secure a bond for the release of the nephew it would be necessary for her to turn over temporarily to a surety company a bank book of the defendant which plaintiff

COPPOLA v. DI BENEDETTO.

said would be returned to her and her money would remain intact; that after she had delivered her bank book to plaintiff the latter withdrew all her money from said bank and closed the account; that the plaintiff " misappropriated and converted to his own use " the said moneys; " that the transaction hereinbefore set forth is the only transaction defendant had with plaintiff, and it is upon such transaction that he predicates or bases his complaint for alleged services rendered defendant; that the alleged claim for services  *  *  *  is based upon the matters recited in the allegations of the counterclaim, and this counterclaim and the allegations herein set forth arise out of the alleged transaction set forth in the said complaint and is part of the same transaction."

Plaintiff, appellant, urges in his brief, on the authority of certain cases cited, that since defendant did not observe the previous suggestions of the court in overruling the counterclaim pleaded in the original and in the first and second amended answers, she should not have been permitted to amend again.  These cases, however, proceed on the notion that the action of the party who has thus pleaded over indicates bad faith.  But in view of the difficulty presented by the instant case and the conclusion to which I have come concerning the propriety of the counterclaim, the reasoning of the cases mentioned is wholly inapplicable here.

Plaintiff's chief contention is that the counterclaim being one in tort, does not comply with the provisions of subdivision 1 of section 266 of the Civil Practice Act, in that it is not " a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action."

Without regard to the correctness of the previous rulings on earlier amended answers — since they are not before us for review — I address myself to the question whether the fourth amended answer contains a permissible counterclaim.  Section 266 of the Civil Practice Act defines a counterclaim as: 1. " A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action; 2. In an action on contract, any other cause of action on contract existing at the commencement of the action."

Prior to 1851 a party who desired to reduce his adversary's claim by some form of affirmative counter demand might (pursuant to 2 R. S. 354, part 3, chap. 6, tit. II, § 18) rely on a set-off, or, in an appropriate case, might bring a cross action.  These rights were circumscribed either by the form in which they had been availed of in the past or by the precise limitations fixed by statute. It would carry us too far afield to discuss these in detail.

**278**                    COPPOLA *v.* DI BENEDETTO.

The Code of Procedure (Laws of 1848, chap. 379, § 128; Laws of 1849, chap. 438, § 149) prescribed what an answer might contain, but made no reference to any counter demand. An amendment (Laws of 1851, chap. 479) for the first time permitted the pleading of a " set-off." Meanwhile the three commissioners who had drafted that Code, Loomis, Graham and Field, appointed by act of April 8, 1847 (Chap. 59, § 8 *et seq.*), and a joint resolution of the Legislature (Laws of 1847, vol. 2, p. 744), pursuant to the authority of the Constitution of 1846 (Art. VI, § 24), reported to the Legislature under date of December 31, 1849 (published in 1850), " The Code of Civil Procedure of the State of New York," and recommended as section 645 (p. 267) provisions indicating what an answer must contain, including the word " counterclaim," which in turn was defined in section 646 substantially in the language of the present section 266 of the Civil Practice Act. Apparently this recommendation of the commissioners resulted in the adoption by the Legislature (Laws of 1852, chap. 392) of an amended section 150 of the Code of Procedure, embodying that precise definition of a counterclaim. In a note to their proposed section 646 the commissioners said:

" In what cases a cross-demand should be litigated in the same action with the original claim, is a question of some importance. On the one side it is said, that there is great inconvenience in having several distinct controversies thrown together into one trial; while on the other it is answered, that there is a greater inconvenience in having several law-suits, where one would answer the purpose.

" The statute of set-off was the first innovation upon the common law. That, however, was quite limited in its operation. Of late years, the courts have let in a new set of cross-demands, under the name of recoupment. We propose in this section to open the door still wider, and to admit many cross-demands, now excluded. Further experience may show, that the door should be opened wider still."

Apart from the adoption of the very term " counterclaim," the language of the section as reported and since in force confirms the declared intention of the commissioners. The words " transaction," " foundation of the plaintiff's claim," and " subject of the action " are not words of art, but colloquial phrases borrowed from the ordinary walks of life. Although courts have in particular instances found difficulty in applying them, the general tendency has been to follow out the declared policy of the commissioners and interpret them liberally in conformity with their manifest purpose. (*Gleason* v. *Bush,* 166 App. Div. 865 [1915]; *Fliess* v. *Hoy,* 150 id. 555 [1912]; *G. & H. Mfg. Co.* v. *Hall,* 61 N. Y. 226; *Laska* v. *Harris,* 215 id. 554; Monell's Practice [2d ed. 1853], 577–587.)

In England the Rules of the Supreme Court, adopted pursuant

to the Judicature Acts of 1883, *et seq.* (Order XIX, rule 3) provide that a defendant "may set-off, or set up by way of counterclaim against the claims of the plaintiff, any right or claim, whether such set-off or counterclaim sound in damages or not, * * *. But the court or a judge may, on the application of the plaintiff before trial, if in the opinion of the court or judge such set-off or counterclaim cannot be conveniently disposed of in the pending action, or ought not to be allowed, refuse permission to the defendant to avail himself thereof." In this respect it is evident that the English practice follows the underlying principle of its provisions in regard to the joinder of parties (*137 East 66th Street* v. *Lawrence,* 118 Misc. 486), namely that of awarding a considerable discretion to the judge in the manner of conducting the actual trial regardless of what may or may not be properly included in the pleadings themselves. The phraseology in reference to whether in the opinion of the judge the counterclaim cannot be *conveniently disposed of* or *ought not to be allowed* indicates that what is aimed at is the reduction in the number of separate causes tried by including counter demands in the same case, provided they can be conveniently heard by the same jury without prejudice to the rights of the plaintiff in his original cause. This consideration of eliminating superfluous litigation is discussed in many New York cases.

" It is entirely just that the plaintiff's claim should be diminished by the amount of the latter debt. The object of the section in question was to authorize a complete and final settlement in one action of all such counterclaims growing out of the state of facts upon which the plaintiff's cause of action is founded." (*Empire Feed Co.* v. *Chatham Nat. Bank,* 30 App. Div. 476, 480 [1898].) (*Kelly* v. *Webster,* 143 App. Div. 737 [1911]; *Rolle* v. *Rolle,* 201 id. 698 [1922]; *O'Brien* v. *Dwyer,* 76 id. 516. See, also, 25 Cyc. 571.)

With this background we are prepared to discuss the counterclaim in the case before us.

Plaintiff's cause of action is pleaded in the form of the common counts. When our new system of practice was initiated, the commissioners devised a statement of facts in place of the old common-law formulæ. It is an interesting incident that the report of the judiciary committee of the Assembly (Assembly Documents No. 47, January 27, 1849) which criticised many of the recommendations of the commissioners, praised the notion of allegations of facts as a basis for the cause of action and suggested *forbidding* " the employment of general forms of pleadings founded upon technical deductions without relating the principal facts from which such deductions are drawn." As there was, however, in the Code of Procedure no such inhibition, our courts have held

uniformly that pleading by way of the common counts is still permissible. Many of the cases will be found cited in a note to Pomeroy's Code Remedies (4th ed. 1904), section 436, *542(2). Without adverting to some of the earlier rules of pleading which required the plaintiff at his own instance to furnish a bill of particulars when the common counts were pleaded, and without reference to the probable right of a defendant under our system to require such a bill before being compelled to answer, the fact remains that plaintiff in the instant case cannot complain (where he has elected to plead in the old form, without specification) if defendant avails of the equivalent privilege of assuming that she knows what concrete facts are in plaintiff's mind and fortifies that assumption by alleging that she has had no other relation with the plaintiff than that arising out of what she alleges to have been an employment by her nephew but which plaintiff apparently regards as an employment by her. That this is the " subject of the action " can, on the pleadings here presented, not be doubted. If plaintiff succeeds in proving that the retainer was that of the defendant, the counterclaim is justified by a literal interpretation of the requirements of section 266 of the Civil Practice Act. Moreover, the facts upon which it is founded are so peculiarly related to the cause of action that they would be a complete defense thereto. (*Dickinson* v. *Tysen*, 209 N. Y. 395.) Indeed, if defendant should prove to be liable, her failure to interpose these facts in some form would, in the event of plaintiff's recovery, estop her from pleading them subsequently as a basis for a counterclaim. (*Gates* v. *Preston*, 41 N. Y. 113; *Goldberg* v. *Schlessinger*, 86 N. Y. Supp. 209; *Livingston* v. *Spero*, 18 Misc. 252.) If, on the other hand, defendant succeeds in proving that the retainer was that of her nephew, the " transaction " and the " subject of the action " were the services performed for that nephew and defendant's alleged loss is one clearly " arising out of the transaction * * * or connected with the subject of the action." It is needless to add that the actual facts are not before us and we neither express or intimate any opinion in regard thereto. We decide only a question of pleading upon the pleadings as they stand.

Order affirmed.

LEVY, J. (concurring). I concur in the result in so far as it holds the counterclaim under consideration to be a proper one under subdivision 1 of section 266 of the Civil Practice Act. While the stricter rule of interpretation in *Bernheimer* v. *Hartmayer* (50 App. Div. 316) and *Marshall* v. *Friend* (35 Misc. 101; affd., 66 App. Div. 624) might impel a different result, nevertheless in

the spirit of liberal construction and the avoidance of superfluous litigation, I believe that the counterclaim should be tried in connection with the main issue. I do not deem it proper, however, that the respondent should be permitted to amend her pleadings for the fourth time without terms.

Present — BIJUR, McGOLDRICK and LEVY, JJ.