S. Z. CHODOROV, INC., and Another, Plaintiffs, *v.* JOSEPH MANHEIMER, Defendant.

City Court of New York, New York County, March 25, 1935.

*Pierce & Hopkins* [*Joseph Goldstein* of counsel], for the plaintiffs.

*Jacob S. Manheimer*, for the defendant.

RYAN, J. The complaint consists of two causes of action, one as to each of the plaintiffs herein, and alleges that the defendant was the landlord of the building in question and that the plaintiffs are tenants occupying separate lofts or space; that the defendant reserved to himself control of various parts of said building, including the roof and all pipes, connections and drains from said roof; that after due and actual notice of the condition, the defendant willfully neglected and carelessly permitted defective condition of the drains to continue and that by reason of said negligence and carelessness the property of the plaintiffs was damaged. The answer, in addition to denials, sets up as a separate defense that the plaintiffs were lessees of said premises under written leases entered into with the defendant, which leases were in full force and effect and pleads a counterclaim for rent against each of the plaintiffs.

Section 18 of the New York City Court Act provides that this court has jurisdiction to enter judgment on a counterclaim in favor of a defendant: " (1) On a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim or connected with the subject thereof."

That provision is in substantial conformity with section 266 of the Civil Practice Act.

The complaint under consideration sounds in tort, while the counterclaims proceed on contract. The question presented is whether the counterclaims pleaded may be properly interposed to the causes of action set forth in the complaint.

The object of the action is to recover damages for alleged injury to merchandise caused, as we read the pleadings, by the alleged negligence of the landlord.

We derive our theories of counterclaim from the Roman civil law, where it was developed far beyond our present statutes and judicial decisions. In the Digest (Book XVI, tit. II, subd. VI) we find: " Whatever is due in consequence of a natural obligation can become the subject of a set-off." Judge COOPER in his notes to Justinian's Institutes ([Ed. 1852] p. 584) has interpreted the Digest as follows: A. owes B. $100 on a *legal* claim. B. owes $50 on a consideration founded in *morality*, but not sufficient ground for suit. A. can set this off.

As might be expected, set-off was first taken up by the equity courts in England and first applied in bankruptcy cases. (*Whitaker* v. *Rush*, 27 Eng. Rep. 272.)

In *Green* v. *Farmer* (98 Eng. Rep. 154) Lord MANSFIELD held (at p. 157) that natural justice called for set-off in all cases but the law said convenience required that each must sue and recover separately.

Coming down to modern times, we find an interesting sketch of the history of the doctrine of set-off and recoupment set forth in the comprehensive opinion of COLLIN, J., in the case of *Seibert* v. *Dunn* (216 N. Y. 237). There we may read (at p. 245): " The doctrines of set-off and recoupment promote justice and diminish circuity of litigation. Courts and legislatures deem them remedial in character and the rules creating and regulating them entitled to a construction fairly liberal."

In the case of *Carpenter* v. *Manhattan Life Insurance Co.* (93 N. Y. 552) plaintiff sued to recover damages for the wrongful conversion of a quantity of wood and the defendant interposed a counterclaim for damages in the wrongful impairment of its security by the severance of the wood from the land. The court, by EARL, J., wrote: " The transaction set forth in the complaint was the conversion of the wood, and hence it cannot be said that the counterclaim arose out of that transaction. But, was it not connected with the subject of the action? The word ' connected ' may have a broad signification. The connection may be slight or intimate, remote or near, and where the line shall be drawn it may be difficult sometimes to determine. The counterclaim must have such a relation to, and connection with, the subject of the action, that it will be just and equitable that the controversy between the parties as to the matter alleged in the complaint and in the counterclaim should be settled in one action by one litigation; and that the claim of the one should be offset against, or applied upon, the claim of the other." The authority last referred to was cited by FOLLETT, J., in writing for the General Term in the First Department in the case of *Ter Kuile* v. *Marsland* (81 Hun, 420), wherein he said that " the doctrine that a counterclaim cannot be allowed in an action to recover damages for a tort was repudiated." And further in his opinion we find this conclusion: " It may be regarded as settled that, in case an action is brought to recover damages for a tort, a counterclaim arising out of a contract connected with the subject of the action may be pleaded, and that in an action on a contract damages arising out of a tort of the plaintiff, if the two causes of action are connected, may be interposed as a counterclaim." In the case at bar the plaintiffs' causes

of action arose out of the alleged negligence of the defendant in permitting the water pipes or drains to remain in such a defective condition as to cause water damage to plaintiffs' merchandise. The defendant's counterclaims do not arise out of plaintiffs' causes of action, but are " connected with the subject of the action," which, in this case, are the rights and liabilities of the litigants, arising out of their performance or non-performance of the duties owing to each other under their contract of lease and they are all connected, within the meaning of the section of the City Court Act and of the Civil Practice Act under consideration. The plaintiffs frankly claim their damages in tort because of the relationship of tenants on their part and landlord on the part of the defendant. This must be the theory of their action. Without such relationship the defendant would owe them no duty on which they could base their claims for damages. In *Goelet* v. *Goldstein* (229 App. Div. 456) we have the converse of the situation; there the plaintiff sued as landlord to recover rent and the defendant as tenant was permitted to counterclaim for the improper maintenance of the demised premises, whereby damages were sought in tort; and the court said (at p. 457): " The third alleged counterclaim grows out of the same transaction," having reference, of course, in its broader sense to the contract of lease. The rule is stated in the well-considered case of *Xenia Branch Bank* v. *Lee* (7 Abb. Pr. 372) that the section under consideration was designed to prescribe a reciprocal rule and that where a counterclaim is properly pleaded the cause of action to which it is pleaded might likewise have been pleaded as a counterclaim if the defendant had brought the action.

The policy of statutory practice requires a liberal construction of the section under consideration to the end that controversies between the same parties arising out of the contract or transaction set forth in the complaint as the foundation of plaintiffs' claim or connected with the subject thereof may be adjusted in one action.

The cases of *Zysman* v. *147 & 149 West 57th Street Corporation* (221 App. Div. 84) and *Moore* v. *Lynch* (130 Misc. 385), cited by plaintiffs, are, in my opinion, clearly distinguishable on the facts from those involved in the case at bar. In the former the cause of action arose out of an alleged eviction after a warrant of dispossess had been issued to which the defendant interposed a counterclaim for damages on the ground of the violation by the plaintiff of the covenants of the lease as to the use of the demised premises. The court held that the " counterclaim viewed from any standpoint does not in any way relate to plaintiff's cause of action, nor is it part of the transaction involved in plaintiff's cause of action. * * * nor is it connected with the subject-matter

of plaintiff's action." The latter case was an action for conversion based upon the allegation that property was left upon the premises when the plaintiff's judgment debtor (lessee) gave up possession and surrendered the lease. Defendant interposed a counterclaim for rent, and was in possession of the premises. Thus in law "the relationship of landlord and tenant came to an end." (Citing *Saracena* v. *Preisler*, 180 App. Div. 348.) The court held that "In these circumstances, however, it does not seem to me that it can be said that the cause of action for rent arose out of the transaction in conversion or that it has any connection with it. It is the general rule that an independent tort which is not connected with the subject of an action for rent cannot be made the basis of a counterclaim or set-off in such an action, and the converse of this rule is equally true." (Citing authorities.)

The latest reported authority on the question is the case of *Harfried Realty Co., Inc.*, v. *Spuyten Amusement Corp.* (150 Misc. 904). In that case it was held that a cause of action against a landlord for negligently permitting water drainage which caused damage to the tenant's personal property was a proper counterclaim in a summary proceeding for non-payment of rent instituted by the landlord. Mr. Justice CALLAHAN expressed the view that such a counterclaim was properly interposed under subdivision 1 of section 266 of the Civil Practice Act. If, under that section, a counterclaim for property damage thus caused is properly interposed as against an action for rent, the converse must necessarily be true. If both grow out of the same transaction, or both are interconnected, then it cannot matter which is the cause of action contained in the complaint and which is the counterclaim.

In view of the conclusions stated and the authorities cited, I think plaintiffs' motion to strike out the counterclaim for rent should be denied and plaintiffs given leave to serve a reply to the counterclaim within six days after the service of a copy of the order to be entered herein. Order signed.